UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMUEL RODRIGUEZ,<br><br>        Plaintiff,<br>   v.<br><br>THE CITY OF NEW YORK DEPARTMENT OF EDUCATION,<br><br>        Defendant. | **MEMORANDUM AND ORDER**<br><br>21-CV-6551 (LDH) (RER) |

L\aSHANN D\eARCY HALL, United States District Judge:

Samuel Rodriguez ("Plaintiff") brings this action against the New York City Department of Education ("Defendant") pursuant to 42 U.S.C. § 1983, alleging racial discrimination. Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety.

## BACKGROUND[1]

Plaintiff describes himself as a "Dominican male." (Compl. ¶ 6, ECF No. 1.) In or about July 2015, Defendant hired Plaintiff as an Administrator of Special Education for the Affinity Field Support Center ("AFSC"). (*Id.*) Two months later, around September 2015, Defendant hired Alexandra Anormaliza as the Executive Director of the AFSC. (*Id.* ¶ 7.) In this role, Anormaliza was Plaintiff's supervisor. (*Id.*) Anormaliza is a "light skinned" Colombian woman. (*Id.*)

Plaintiff alleges Anormaliza "began discriminating against [him] based upon his national origin" almost immediately after she was hired. (*Id.* ¶ 8.) Specifically, less than three weeks

---

[1] The following facts taken from the complaint (ECF No. 1) are assumed to be true for the purpose of deciding the instant motion.

1

after Anormaliza was hired, she assigned Plaintiff to a new role as the Administrator for English Language Learners. (*Id.*) Prior to this, Plaintiff had not received any disciplinary actions, nor been told that "his work was deficient in any way." (*Id.*) However, Anormaliza falsely claimed that the Special Education Director of the AFSC, a "Caucasian," was uncomfortable with Plaintiff in his old position. (*Id.*) Because of the reassignment, Plaintiff could no longer "earn[] the necessary three (3) years under either of his particular licenses [English Language Learners . . . or Education Administrator] required for tenure." (*Id.* (abbreviations omitted).)

In or around October 2015, Defendant appointed Daniel Walsh as the Director of the English Language Learners ("ELL") program. (*Id.* ¶ 9.) Walsh is "Caucasian." (*Id.*) Plaintiff claims that Defendant appointed Walsh over Plaintiff, despite the fact that Walsh had less experience and fewer credentials than Plaintiff. (*Id.*) Walsh then began treating Rodriguez differently from other similarly situated non-Dominican employees. (*Id.* ¶ 10.) Specifically, Walsh "micromanag[ed] [Plaintiff] in ways that he would not other employees, sending multiple reminders for appointments and criticizing [Plaintiff] over minor issues, such as the font he used for a presentation." (*Id.*) Plaintiff reported this difference in treatment to Anormaliza, who did nothing to rectify the situation. (*Id.*)

In or around February 2016, Plaintiff was late to a meeting. (*Id.* ¶ 11.) Plaintiff explained to Anormaliza that he was late due to insomnia, which was a result of "the hostile work environment to which Walsh was subjecting him." (*Id.*) Nevertheless, Anormaliza issued Plaintiff a written discipline. (*Id.*) Plaintiff was subsequently diagnosed with sleep apnea, of which he apprised Anormaliza. (*Id.*)

A month later, in or around March 2016, Plaintiff attended a meeting with a group of school principals about the ELL program. (*Id.* ¶ 12.) Plaintiff stayed after the meeting to discuss

various issues the principals were having in their schools. (*Id.*) When Plaintiff did not return to the office after the meeting, Walsh and Anormaliza accused Plaintiff of not working a full day. (*Id.*) In response, Plaintiff explained that he continued to work after the meeting officially ended and offered Walsh and Anormaliza emails from the principals as proof. (*Id.*) Plaintiff had done the same after previous meetings without incident. (*Id.*) Nonetheless, Anormaliza and Walsh issued Plaintiff another written discipline for failing to work a full day. (*Id.*) Similarly situated non-Dominican employees were not subjected to such false discipline. (*Id.*)

Then, in or around August 2016, Plaintiff attended a training session held by a "light skinned male." (*Id.* ¶ 13.) During the training, Plaintiff asked the trainer questions that the trainer was unable to answer. (*Id.*) In retaliation for asking these questions, Anormaliza issued Plaintiff another written discipline, "falsely accusing [Plaintiff] of being late to the training, falling asleep at the training, and taking phone calls during the training." (*Id.*) That same month, Plaintiff complained to Sheryl Watson, the Executive Director for AFSC, that he was being subjected to a hostile work environment by Walsh and Anormaliza. (*Id.* ¶ 14.) Watson did not respond or take any action to stop the hostile behavior. (*Id.*)

On or about November 6, 2016, Plaintiff attended a development meeting. (*Id.* ¶ 15.) Anormaliza subsequently accused Plaintiff of not attending a different meeting. (*Id.*) Plaintiff explained that he had been occupied by the development meeting, and that his attendance had been pre-approved by Walsh. (*Id.*) Walsh denied knowing that Plaintiff was in a development meeting, and Anormaliza again issued written discipline to Plaintiff. (*Id.*) Plaintiff alleges that similarly situated non-Dominican employees, and those who did not complain of discrimination, were not subjected to such false discipline. (*Id.*)

On or about November 21, 2016, Defendant advised Plaintiff that it was "discontinuing" his employment based upon his disciplinary history. (*Id.* ¶ 16.) Then, on or about December 13, 2016, Defendant "placed [Plaintiff] in the 'rubber room,' falsely claiming that [Plaintiff] threatened to harm the AFSC." (*Id.* ¶ 17.) As a result of being in the "rubber room," Plaintiff was prevented from interviewing for other principal positions or other positions with Defendant, which negatively impacted his career. (*Id.* ¶ 18.) Similarly situated non-Dominican employees, and those who did not complain of discrimination, were not subjected to such treatment. (*Id.*)

In or around July 2018, the DOE revoked Plaintiff's ELL license, based upon Anormaliza's recommendation. (*Id.* ¶ 19.) Plaintiff was nonetheless able to apply for positions with Defendant under his Education Administrator ("EA") license. (*Id.*) But, in or around December 2018, Defendant cancelled Plaintiff's EA license. (*Id.* ¶ 20.) In response, Plaintiff asked the AFSC Superintendent what he could do to keep his position; the Superintendent refused to assist Plaintiff. (*Id.*) On or about February 11, 2019, Defendant terminated Plaintiff on the grounds that he was no longer licensed. (*Id.* ¶ 21.)

Ultimately, Plaintiff complains that: (1) Defendant had a custom or practice of discriminating and retaliating against Plaintiff "based on his national origin and/or opposition to discriminatory practices," and that the practices "were so persistent and widespread that they constitute the constructive acquiescence of policymakers;" (2) supervisors failed to properly investigate and address allegations of retaliation or discrimination; (3) Defendant's failure to adequately train and supervise its employees was so likely to result in harassment or discrimination that "policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision;" and, (4) policymakers engaged in or "tacitly condoned" the harassment and discrimination. (*Id.* ¶ 23.)

4

**STANDARD OF REVIEW**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct.  *Id*.  While this standard requires more than a "sheer possibility" of a defendant's liability, *id*., "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss, *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999).  Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

**DISCUSSION**

**I.      Statute of Limitations**

Defendant contends that any claim predicated upon conduct that occurred more than three years before the start of this action are barred by the statute of limitations.  (Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 4–5, ECF No. 11-1.)  The Court agrees.

"The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." *Shomo v. City of New York*, 579 F3d. 176, 181 (2d Cir. 2009); *see also Jones v. City of New York Agencies*, 550 F. App'x. 67, 67 (2d Cir. 2014) ("New York's personal injury statute of limitations—three years—applies to § 1983 claims").  This action was commenced on November 23, 2021.  (*See* Compl., ECF No. 1.)  Therefore, to be timely, Plaintiff's claims must be based

upon conduct that occurred on or after November 23, 2018.  However, much of the conduct alleged in the complaint did not.  Plaintiff's § 1983 claim is therefore dismissed to the extent that it is premised upon:  Plaintiff's transfer in September 2015; the alleged micromanagement experienced in or around October 2015; the written discipline issued in February 2016, March 2016, August 2016, and November 2016; Plaintiff's discontinued employment in November 2016; Plaintiff's administrative reassignment in December 2016; and the revocation of Plaintiff's ELL license in July 2018.  That said, Plaintiff's claims arising from the revocation of his EA license in December 2018, and from his termination in February 2019, are not time barred.  And, although actions prior to November 23, 2018, cannot give rise to their own claims of discrimination, they may be considered as "background evidence" in support of Plaintiff's timely claims.  *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004) (untimely adverse employment actions "may constitute relevant background evidence in support of a timely claim" (internal quotation marks and citation omitted)).[2]

## II.   Municipal Liability

"Public employees aggrieved by discrimination in the terms of their employment may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).  However, a municipality may not be held liable under § 1983 solely for the acts of its employees.  *See Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009).  Rather, a municipality is only liable under Section 1983 if the "challenged acts were performed pursuant to a municipal policy or custom[.]" *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) (citations

---

[2] Because Plaintiff has withdrawn his hostile work environment claims (*see* Plaintiff's Opp'n. to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 1 n.1, ECF No. 11-2.), the Court need not consider whether Defendant's alleged conduct constitutes a "continuing violation" under a hostile work environment theory.  *See Smith v. City of New York*, 664 F. App'x 45, 47 (2d Cir. 2016).

6

omitted). "To show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation." *Id.* (citation omitted). As relevant here, a plaintiff can allege either "a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials" or "a failure by policy makers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." *Bliven v. Hunt*, 478 F. Supp. 2d 332, 336–37 (E.D.N.Y.2007), *aff'd*, 579 F.3d 204 (2d Cir. 2009).

Even a cursory review of the complaint reveals that Plaintiff's allegations against the Defendant amount to nothing more than boilerplate claims routinely rejected by the Court. Ostensibly alleging a policy or practice, Plaintiff pleads that Defendant was deliberately indifferent to a "custom or practice of discriminating and/or retaliating against Plaintiff based on his national origin and/or his opposition to discriminatory practices," which were "so persistent and widespread that they constitute[d] the constructive acquiescence of policymakers." (Compl. ¶ 23(a).) Such boilerplate allegations of a municipal practice or custom cannot survive a motion to dismiss. *See Jackson v. Nassau Cnty.*, 552 F. Supp. 3d 350, 381 (E.D.N.Y. 2021) (dismissing plaintiff's *Monell* claim where allegations were "boilerplate"); *see also Santiago v. City of New York*, No. 09-CV-0856, 2009 WL 2734667, at *3 (E.D.N.Y. Aug. 25, 2009) ("[I]t is now clear that such boilerplate [*Monell*] claims do not rise to the level of plausibility").

Alternatively, Plaintiff presses *Monell* liability against Defendant under a theory that Defendant failed to train its employees. To survive a motion to dismiss a *Monell* claim for inadequate training or supervision, a complaint must allege facts showing:

> [A] policymaker knows 'to a moral certainty' that her employees will confront a given situation . . . that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation . . . [and] that the wrong choice

7

> by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

*Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992) (internal quotation marks and citation omitted).

As a threshold matter, Plaintiff does not plead sufficient facts to allow the inference that any of the actors named in the complaint are "policymakers." *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1998) ("[O]nly those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability." (internal quotation marks and citation omitted)). Moreover, even if Plaintiff had made such a showing, his claim nonetheless fails because he does not allege any facts from which the Court can infer that a policymaker was on sufficient notice of the misconduct, such that a failure to train amounted to "deliberate indifference" of the alleged constitutional deprivations. *See R.A. v. City of New York*, 206 F. Supp. 3d 799, 803–04 (E.D.N.Y. 2016) (dismissing *Monell* failure-to-train claim because plaintiff failed to plead sufficient facts showing deliberate indifference).

To be sure, at the motion to dismiss stage, a plaintiff is not required to identify specific deficiencies in the municipality's training programs, or establish a causal link between lack of training and the alleged misconduct. *See Amnesty America v. Town of West Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004) (noting that "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage"). But, here, the only instances of misconduct that Plaintiff attributes to his superiors are the lack of response of Watson to his email of August 2016, and the AFSC Superintendent's refusal to help Plaintiff keep his position following the termination of his EA license. (Compl. ¶¶ 14, 20.) Standing alone, these two facts are insufficient to show Defendant's deliberate indifference to the possibility that its employees will violate individuals' constitutional rights, as required to subject

8

Defendant to liability on a failure to train theory. Accordingly, Plaintiff's claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in its entirety.

SO ORDERED.

Dated: Brooklyn, New York　　　　　　　　/s/ LDH
　　　　　March 31, 2023　　　　　　　　　　LaSHANN DeARCY HALL
　　　　　　　　　　　　　　　　　　　　　　United States District Judge